OPINION OF THE COURT
Joseph E. Gubbay, J.
The defendant is charged with violations of section 1192 (1) and (3) of the Vehicle and Traffic Law.
The defendant has moved to suppress his statement as the fruit of the poisonous tree insofar as defendant’s arrest was unlawful and because it was taken in the absence of Miranda warnings.
Defendant also moves to suppress his refusal to submit to a breathalyzer test as a product of the illegal arrest and because he was not properly warned of the consequences of such refusal.
The court makes the following findings based upon the credible evidence obtained during the course of a hearing convened on June 17, 1999.[1] One witness, Police Officer Tabb, testified that on January 16, 1999 at approximately 1:00 a.m., he and his partner saw the defendant slumped over the steering wheel *798 of a station wagon legally parked near the defendant’s home on 4th Avenue and Second Street in Brooklyn. The engine of the car was running and the lights were off. The officer tapped on the window of the vehicle causing the defendant to wake up and roll the window down. At this point, the officer observed that the defendant’s eyes were bloodshot and watery and he detected the strong odor of alcohol on his breath.
The officer directed the defendant to exit the vehicle and to walk to the sidewalk. The officer observed the defendant stagger to some extent and appear unsteady on his feet. Once on the sidewalk, the officer asked the defendant if he had been drinking to which the defendant responded, “Yes, three beers.” The officer testified that prior to asking the defendant this question, the defendant was not free to leave, and that the question was posed because the officer thought the defendant had been drinking and driving.
The defendant was promptly placed under arrest and taken to the 70th Precinct where he was asked to submit to a breathalyzer test. After being warned, in Spanish, that any refusal would result in the suspension or revocation of his license or privilege to drive and that such refusal could be used against him at trial, the defendant stated, unequivocally, that he would not submit to the breathalyzer test. These warnings and subsequent refusal were videotaped and played for the court. The defendant’s refusal was buttressed by his vulgar hand gestures to the video technician. The warnings were translated for the court by the duly sworn court interpreter.
The court finds that the defendant’s arrest was lawful. Upon finding the defendant unconscious and/or asleep, slumped over the steering wheel of a running car, the police officer had a duty to inquire as to the defendant’s safety. These observations, coupled with the defendant’s bloodshot and watery eyes, the strong odor of alcohol on his breath and unsteady gait provided reasonable cause to arrest the defendant for the crimes charged. The defendant has asked the court to rely on People v Khan (168 Misc 2d 192 [Crim Ct, Kings County 1995]) for the proposition that without more, a defendant slumped unconscious over the steering wheel of a legally parked car with the engine running is as a matter of law an insufficient basis to arrest for driving while intoxicated or impaired. According to Khan, the government must provide additional evidence to demonstrate more clearly that the defendant either recently moved the vehicle or intended to do so.
This court does not find Khan (supra) to be persuasive. Khan cites two cases: People v O’Connor (159 Misc 2d 1072 [Dist Ct, *799 Nassau County 1994]) and People v De Santis (NYLJ, May 21, 1990, at 32, col 4 [App Term, 9th & 10th Jud Dists]) in support of the proposition that when a driver of a legally parked car starts the engine of his car, without an intention to set the car in motion, operation of a motor vehicle has not occurred. What distinguishes O’Connor and De Santis from the case at bar, and it is a critical and fundamental distinction, is that in each of these cases, the defense introduced evidence which negated the intent to operate the vehicle.[2] No such evidence was introduced in the instant case.
People v O’Connor {supra) is particularly instructive. The O’Connor court noted that, “It has been recognized that the definition of ‘operation’ for purposes of Vehicle and Traffic Law § 1192 is broader than the ordinary definition of driving. It includes the act of ‘[using] the mechanism of the automobile for the purpose of putting the automobile in motion even though [the vehicle does not move]’.” (Supra, at 1174-1175, citing Matter of Prudhomme v Hults, 27 AD2d 234 [3d Dept 1967].) Importantly, the New York Court of Appeals, in People v Alamo (34 NY2d 453, 458 [1974]), citing Prudhomme, observed, “An established line of authority in New York and elsewhere holds that * * * operation of the vehicle is established on proof that the defendant was merely behind the wheel with the engine running without need for proof that defendant was observed driving the car, i.e., operating it so as to put it in motion.”
Consistent with these findings, the New York Criminal Jury Instructions permit the jury to infer operation based on evidence of a person sitting behind the wheel of a stationary motor vehicle with the engine running. (2 CJI[NY]2d VTL 1192, at 1010-1011.) The O’Connor court concluded, however, “Where there exists a logical, credible explanation such an inference can be defeated.” {Supra, at 1075.) No such explanation was offered in the instant case. While defendant may, of course, offer such proof at trial, the uncontroverted evidence demonstrates that there was reasonable cause to arrest the defendant for the crimes charged and the arrest was lawful. That being so, there is no basis to suppress either the refusal or the statement as the tainted fruits of an illegal arrest.
*800 The defendant contends that the statements made in response to the roadside inquiry conducted by the officer must be suppressed as the inquiry was not preceded by Miranda warnings. The evidence, however, does not indicate that the defendant was in custody prior to being questioned. While the officer did state that the defendant was not free to leave, there is no indication that intent was ever communicated to the defendant either verbally or implicitly by the officer’s conduct. The standard to be applied is what a reasonable person, innocent of the crime, would have believed had that person been in the defendant’s position. (People v Dorsey, 118 AD2d 653 [2d Dept 1986].) Here, the officers did not approach the defendant with their guns drawn, there was no suggestion of threats or of physical or constructive restraint, and the detention was brief. The subjective intent of the officer to detain an individual is irrelevant, except insofar as it is conveyed to the individual. (People v Joy, 114 AD2d 517 [2d Dept 1985].)
Further, it is clearly established that a roadside inquiry, such as the one in the instant case, does not require the rendition of Miranda warnings before a preliminary inquiry may ensue. (Berkemer v McCarty, 468 US 420 [1984]; People v Hasenflue, 252 AD2d 829, 830 [3d Dept 1998].)
Finally, the evidence is clear that the defendant was adequately advised of the consequences of refusing to submit to a breathalyzer exam, particularly with respect to the fact that such refusal would result in certain suspension or revocation of his driving license and/or privileges to drive, and that such refusal could be used against him at trial or a subsequent hearing or proceeding. Defendant’s refusal was unequivocal. Defendant’s motion to suppress the refusal based on inadequate warnings is therefore denied.

. A Spanish interpreter was present and interpreted for the defendant.

. In O’Connor (supra), the defendant pumped the accelerator pedal for the purpose of helping the car’s owner, who was using a screwdriver, to start the car. In De Santis (supra), the defendant started the engine solely for the purpose of heating the car. Notably, in Khan (supra) no evidence was presented by the defense, suggesting that reliance on O’Connor and De Santis were misplaced.