OPINION OF THE COURT
 

 Wesley, J.
 

 This case presents the question whether attempted driving while intoxicated and attempted aggravated unlicensed operation of a motor vehicle are legally cognizable offenses. For the reasons to follow, we conclude that they are not.
 

 On the evening of November 13, 1998, Jeffrey Orlando and his wife were alerted by sounds outside their home. When Orlando looked out the window, he saw defendant getting into Orlando’s truck. Orlando stepped outside and found defendant in the front seat of the truck, with the keys in the ignition, attempting to start the vehicle. Although the vehicle was operable, defendant was having difficulty engaging the engine because “[t]he truck is hard to get started when it is cold and you have to know how to do it.” When Orlando confronted defendant, defendant indicated that he wanted to use the truck to pull his own vehicle out of a nearby ditch. According to Orlando, defendant was “out of it.”
 

 Defendant was thereafter charged with numerous offenses, including attempted driving while intoxicated (Penal Law § 110.00; Vehicle and Traffic Law § 1192 [2], [3]) and attempted aggravated unlicensed operation of a motor vehicle in the first degree (Penal Law § 110.00; Vehicle and Traffic Law § 511 [3]) with respect to Orlando’s vehicle. Defendant filed an omnibus
 
 *658
 
 motion seeking, among other things, dismissal of those counts of the indictment on the basis that it is not legally possible to commit the crimes of attempted driving while intoxicated or attempted aggravated unlicensed operation of a motor vehicle in the first degree.
 
 [1]
 

 County Court granted the motion and dismissed the charges in question (183 Misc 2d 181).
 
 [2]
 
 Relying on this Court’s decision in
 
 People v Campbell
 
 (72 NY2d 602), the court ruled that because the core conduct in the offense of driving while intoxicated “is not the operation of a motor vehicle, but the operation of a motor vehicle
 
 while in an intoxicated condition,”
 
 and the “element” of intoxication does not require proof of a specific intent, it is legally impossible to commit the crime of attempted driving while intoxicated
 
 (id.,
 
 at 183-184 [emphasis in original]).
 

 The Appellate Division unanimously reversed (263 AD2d 254). The Court concluded that the crime of driving while intoxicated is a strict liability crime not because it proscribes a result as in
 
 Campbell,
 
 “but because it proscribes particular
 
 conduct” (People v Prescott,
 
 263 AD2d, at 256,
 
 supra).
 
 Applying this Court’s rationale in
 
 People v Saunders
 
 (85 NY2d 339), the Court determined that a person can be found guilty of attempted driving while intoxicated when, while intoxicated and with intent to operate the vehicle, the person engages in conduct which tends to effect the commission of such crime (263 AD2d, at 256).
 

 With respect to aggravated unlicensed operation of a motor vehicle in the first degree, the Appellate Division held that the element of that offense that made it a strict liability crime (i.e., driving while intoxicated) is merely an aggravating circumstance that elevates the severity of the crime and, thus, an attempt was possible
 
 (id.,
 
 citing
 
 People v Fullan,
 
 92 NY2d 690, 693-694;
 
 People v Miller,
 
 87 NY2d 211, 217). A Judge of this Court granted defendant leave to appeal and we now reverse.
 

 
 *659
 
 I.
 

 Generally, where a penal statute imposes strict liability for creating an unintended
 
 result,
 
 an attempt to commit that crime is not a legally cognizable offense
 
 (see, People v Campbell,
 
 72 NY2d, at 605-606,
 
 supra).
 
 One cannot attempt to create an unintended result. By contrast, where a penal statute imposes strict liability for committing certain
 
 conduct,
 
 an attempt is legally cognizable, since one can attempt to engage in conduct
 
 (see, People v Saunders,
 
 85 NY2d, at 341,
 
 supra).
 
 Likewise, an attempt is legally cognizable where a statute penalizes certain core
 
 conduct,
 
 but includes as an aggravating factor that the defendant caused an unintended result
 
 (see, People v Fullan,
 
 92 NY2d, at 693-694,
 
 supra; People v Miller,
 
 87 NY2d, at 217-218,
 
 supra).
 

 Driving while intoxicated appears to fit within the confines of
 
 Saunders,
 
 since it is aimed principally at conduct: operating a motor vehicle while “intoxicated.” However, as the
 
 Saunders
 
 Court acknowledged, other factors, including statutory and policy considerations, can help inform the “attempt” analysis
 
 (People v Saunders,
 
 85 NY2d, at 342-343,
 
 supra).
 
 Here, we conclude that the Legislature did not contemplate criminal liability for attempted drunk driving. We reach that conclusion based on the comprehensive nature of article 31 of the Vehicle and Traffic Law and its discrete penalty scheme.
 

 In the early 1980’s, drunk driving became a dominant social issue. Drunk drivers were the leading cause of highway deaths in New York
 
 (see,
 
 Mem in Support, Bill Jacket, L 1981, ch 910;
 
 see also,
 
 1984 Report of Assembly Comm on Transp, Drunk Driving Reform in New York State: 1981-1984; Strategy, Results and Recommendations, at 1). In response, the Legislature enacted a series of reforms
 
 (see, e.g.,
 
 L 1981, chs 910, 913;
 
 see also,
 
 Mem in Support, Bill Jacket, L 1981, ch 910) and in 1988 consolidated and recodified pertinent provisions into a single article
 
 (see,
 
 L 1988, ch 47). Article 31 emerged as a tightly and carefully integrated statute the sole purpose of which is to address drunk driving.
 
 [3]
 

 
 *660
 
 The penalties for section 1192 violations are specific; each offense is accorded its own criminal punishment
 
 (see,
 
 Vehicle and Traffic Law § 1193 [1] [a], [b], [c]). Violations incurred during the operation of special motor vehicles are subject to different penalties
 
 (see, e.g.,
 
 Vehicle and Traffic Law § 1193 [d] [1-a] [operating a school bus while impaired is a misdemeanor punishable by a fine of not less than $500 nor more than $1,500 or by a period of imprisonment as provided in the Penal Law or both]). Section 1193 classifies each section 1192 violation and correlates penalties to the specific degree of the violation
 
 (see, e.g.,
 
 Vehicle and Traffic Law § 1193 [1] [b], [c] [compare misdemeanor driving while intoxicated fines and sentences with those for felony driving while intoxicated]). The penalties for multiple section 1192 violations increase with each violation that occurs over a specific period of time
 
 (see, e.g.,
 
 Vehicle and Traffic Law § 1193 [1] [c] [i] [person who operates a vehicle in violation of section 1192 (2), (3) or (4) with a prior conviction for a section 1192 (2), (3) or (4) violation within 10 years is guilty of a class E felony and shall be punished by a fine of not less than $1,000 nor more than $5,000 or by a period of imprisonment provided in the Penal Law or both]).
 
 [4]
 
 Unlike the Penal Law, section 1193 mandates minimum fines where a fine is imposed
 
 (compare,
 
 Vehicle and Traffic Law § 1193 [1] [b] [misdemeanor driving while intoxicated has a minimum fine of $500],
 
 with
 
 Penal Law § 80.05 [1], [2] [class A and B misdemeanors have no minimum]).
 

 In addition to criminal penalties, section 1193 further imposes mandatory minimum periods for license suspension or revocation
 
 (see, e.g.,
 
 Vehicle and Traffic Law § 1193 [2] [a] [1] [license suspended for 90 days where a person is convicted of driving while ability impaired]; Vehicle and Traffic Law § 1193 [2] [b] [1] [license revoked for a minimum of six months where
 
 *661
 
 a person is convicted of driving while ability impaired within five years of another section 1192 conviction]). These sanctions, like the criminal penalties, are correlated to the specific nature and degree of the section 1192 violation
 
 (compare,
 
 Vehicle and Traffic Law § 1193 [2] [b] [2] [revocation for period of six months for first time offender of section 1192 (2), (3) or (4)],
 
 with
 
 Vehicle and Traffic Law § 1193 [2] [b] [4-a] [A] [revocation for a period of one year for school bus driver who has violated any subdivision of section 1192 and has at least one bus passenger]).
 

 The Legislature placed great significance on the enforcement of specific statutory penalties for drunk driving. The statute provides that sentences for special vehicle offenses must be imposed despite contrary provisions in the Penal Law (see, Vehicle and Traffic Law § 1193 [1] [d] [6]). Moreover, a sentencing court is prohibited from imposing an unconditional discharge for a section 1192 violation, and conditional discharges or probation sentences must be accompanied by a fine (see, Vehicle and Traffic Law § 1193 [1] [e]).
 
 [5]
 
 When a person is convicted of a felony under the Vehicle and Traffic Law where a minimum fine has been established, the sentencing court is authorized to impose the minimum notwithstanding the fines schedule established for Penal Law felonies (see, Penal Law § 80.00 [6]; § 80.05 [4]; see
 
 also,
 
 Penal Law § 80.15). Thus, the Legislature has made it clear that the courts must look to section 1193 for the appropriate penalties and sentencing options for drunk driving offenses.
 

 By charging defendant with attempted drunk driving, the People are asking the courts to create an offense not contemplated by the detailed statutory scheme.
 
 [6]
 
 Indeed, it is difficult, if not impossible, to ascertain what punishment could be imposed for the crime of
 
 attempted
 
 driving while intoxicated. The Vehicle and Traffic Law certainly does not provide for it. Under Penal Law § 110.05, an attempt to commit a crime is generally classified one grade below the completed crime
 
 (see,
 

 
 *662
 
 Penal Law § 110.05). While, under section 110.05, attempted drunk driving could theoretically be punished under article 70 of the Penal Law, this would not comport with the intent of article 31 of the Vehicle and Traffic Law which, as noted, has its own mandatory set of criminal and administrative penalties for drunk driving offenses (compare, Vehicle and Traffic Law § 1193 [1] [b],
 
 with
 
 Penal Law §§ 70.15, 80.05;
 
 see also,
 
 Penal Law § 55.10 [2] [b]). Surely, if the Legislature had contemplated a separate crime of attempted drunk driving, it would have provided penalties for these offenses as well.
 
 [7]
 

 Although the statute itself does not recognize attempt liability, the breadth of conduct prohibited by Vehicle and Traffic Law § 1192, as interpreted by our courts, is sweeping. Our courts have long recognized that the definition of operation is broader than that of driving and that “ ‘[a] person operates a motor vehicle within the meaning of [the statute] when, in the vehicle, he intentionally does any act or makes use of any mechanical or electrical agency which alone or in sequence will set in motion the motive power of the vehicle’ ”
 
 (People v Alamo,
 
 34 NY2d 453, 459, quoting
 
 Matter of Prudhomme v Hults,
 
 27 AD2d 234, 237;
 
 see also, People v O’Connor,
 
 159 Misc 2d 1072, 1074-1075).
 
 [8]
 
 Thus, criminal liability under section 1192 can attach to conduct “dangerously close” to driving, as long as that conduct occurs upon locations covered by the statute
 
 (see, e.g., People v Mahboubian,
 
 74 NY2d 174, 190;
 
 see also,
 
 Vehicle and Traffic Law § 1192 [7]).
 

 Notably, in all its Vehicle and Traffic Law amendments, the Legislature has made no effort to narrow the definition of “operate”
 
 (see, Sheehy v Big Flats Community Day,
 
 73 NY2d 629, 635 [Legislature must be presumed to have been aware of longstanding judicial construction]). Given the broad, all-or-nothing definition of operation, it is understandable that the Legislature has not seen the need to expand penal sanctions to include at
 
 *663
 
 tempted drunk driving. Indeed, the current state of the law appears to make such a crime unnecessary.
 

 In sum, we conclude that, in light of the distinct nature of article 31 of the Vehicle and Traffic Law, the statute’s exclusive penalties, and the highly integrated statutory scheme, the Legislature did not contemplate the offense of attempted driving while intoxicated.
 
 [9]
 
 A determination otherwise would only lead to judicial and administrative confusion.
 

 II.
 

 For the same reasons, we hold that there can be no offense of attempted aggravated unlicensed operation of a motor vehicle in the first degree pursuant to Vehicle and Traffic Law § 511 (3). A person is guilty of aggravated unlicensed operation in the first degree under Vehicle and Traffic Law § 511 (3) when a person operates a motor vehicle “knowing or having reason to know that such person’s license or privilege of operating such motor vehicle in this state” has been “suspended, revoked or otherwise withdrawn”; the suspension is based on a section 1192 violation or other qualifying reasons not relevant here;
 
 and
 
 such person is operating a motor vehicle in violation of section 1192 of the Vehicle and Traffic Law (Vehicle and Traffic Law § 511 [3]; [2] [a] [ii], [iii], [iv]; [1] [a]).
 

 The People contend that in this case the strict liability portion of the offense — the operation of a motor vehicle while under the influence of alcohol in violation of Vehicle and Traffic Law § 1192 (2) and (3) — is nothing more than an aggravating circumstance and thus there can be attempt liability under the statute
 
 (see, People v Fullan,
 
 92 NY2d 690, supra;
 
 People v Miller,
 
 87 NY2d 211,
 
 supra).
 
 While that may well be true in theory, we conclude that, like drunk driving, the Legislature did not contemplate an attempted offense under Vehicle and Traffic Law § 511.
 

 
 *664
 
 Like article 31, section 511 is part of an integrated, statutory scheme. It is found within article 20 of the Vehicle and Traffic Law which governs suspension, revocation and reissuance of licenses and registrations. Section 511 classifies and provides specific penalties for each degree of the offense of operation of a motor vehicle while one’s license is suspended or revoked (compare, Vehicle and Traffic Law § 511 [1] [b] [aggravated unlicensed operation of a motor vehicle in the third degree is a misdemeanor the sentence of which must be a fine of not less than $200 nor more than $500, or a term of imprisonment of not more than 30 days or both],
 
 with
 
 Vehicle and Traffic Law § 511 [3] [b] [aggravated unlicensed operation of a motor vehicle in the first degree is a class E felony the sentence of which must be a fine not less than $500 nor more than $5,000, a term of imprisonment as provided in the Penal Law, or where term of imprisonment is not required, sentence of probation, or a term of imprisonment as a condition of probation as provided in the Penal Law]). Section 511 limits guilty pleas and allows a court to require participation in an alcohol or drug treatment program as a condition of probation (Vehicle and Traffic Law § 511 [5], [6]). Given the specific and well-defined nature of the offense and the penalties to be accorded, we conclude that this is another area in which the Legislature did not intend to expand attempt liability.
 

 Finally, we note that, like article 31, this section employs “operation” of a motor vehicle in the definition of the conduct proscribed. Thus, the statute prohibits drunk unlicensed operators who have lost their privilege to drive from engaging in conduct that comes dangerously close to driving.
 

 Accordingly, the Appellate Division order should be reversed, and defendant’s motion to dismiss counts four, five and six of the indictment should be granted.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Rosenblatt and Graffeo concur.
 

 Order reversed, etc.
 

 [1]
 

 . Defendant was also charged with unauthorized use of the Orlando vehicle pursuant to Penal Law § 165.05 (1). His motion to dismiss addressed that charge but was denied.
 

 [2]
 

 . The indictment also alleged two counts of felony driving while intoxicated (Vehicle and Traffic Law § 1192 [2], [3]) and one count of aggravated unlicensed operation of a motor vehicle in the first degree (Vehicle and Traffic Law § 511 [3]) with respect to the operation of defendant’s vehicle. Those counts later went to trial; defendant was convicted of all three.
 

 [3]
 

 . Under article 31, the offenses and penalties are systematically interwoven with police procedures and rehabilitative programs. Section 1192 defines the offenses and section 1193 sets forth the sanctions (both criminal and administrative) (see, Vehicle and Traffic Law §§ 1192, 1193). Section 1194 details arrest and field test guidelines for section 1192 violations including the administration of chemical tests and penalties for driver refusals of testing (see, Vehicle and Traffic Law § 1194). Section 1195 prescribes the cir
 
 *660
 
 cumstances when and how chemical test evidence is to be admitted (see, Vehicle and Traffic Law § 1195). Section 1196 establishes an alcohol and drug rehabilitation program and sets forth eligibility criteria in the context of section 1192 violations (see, Vehicle and Traffic Law § 1196). Section 1196 also creates a “conditional license” for program participants that affords limited and essential driving privileges to a holder (see, Vehicle and Traffic Law § 1196 [7]). The section also authorizes, with some restrictions, termination of the license suspension or revocation after completion of the program. Finally, section 1197 authorizes counties to establish their own driving while intoxicated prevention programs (see, Vehicle and Traffic Law § 1197).
 

 [4]
 

 . Felony liability may also be based on a prior conviction for vehicular assault in the first and second degrees (Penal Law §§ 120.03, 120.04) or vehicular manslaughter in the first or second degrees (Penal Law §§ 125.12, 125.13).
 

 [5]
 

 . In addition to the administrative and criminal sanctions available under the statute, a sentencing court is given the authority to require a defendant to attend a victims impact program (Vehicle and Traffic Law § 1193 [1] [f]) and, in its discretion, prohibit a defendant from entering a rehabilitation program (Vehicle and Traffic Law § 1196 [4]).
 

 [6]
 

 . Unlike New York, some jurisdictions have explicitly made attempted driving while intoxicated a crime in their statutes (see, Kan Stat Annot § 8-1567 [a] [“No person shall operate or attempt to operate”]; NH Rev Stat Annot § 265:82 [I] [“No person shall drive or attempt to drive”]; Vt Stat Annot, tit 23, § 1201 [a] [“A person shall not operate, attempt to operate”]).
 

 [7]
 

 . For example, license sanctions could not be administered because it is not apparent under the Vehicle and Traffic Law what period of revocation or suspension should be imposed upon someone who commits “attempted” driving while intoxicated (see,
 
 e.g.,
 
 Vehicle and Traffic Law § 1193 [2]).
 

 [8]
 

 . In
 
 People v Domagala
 
 (123 Misc 757), the defendant was observed attempting to start his motor vehicle six times and every time he attempted to put it into gear, his motor stalled. The court noted that the word “operate” included the definition “ ‘[t]o bring about a specified result’ ” and found that defendant “violate [d] the law the instant he began to manipulate the machinery of the motor for the purpose of putting the automobile into motion”
 
 (id.,
 
 at 758, quoting 29 Cyc 1496;
 
 cf., People v O’Connor, supra; People v Edwards,
 
 158 Misc 2d 615).
 

 [9]
 

 . Given the broad nature of the term “operate,” one could conclude that defendant’s conduct was not an attempt, but actual operation of the vehicle in question. The District Attorney chose to charge defendant with attempt liability. We further note that it appears that the conduct in question may have occurred in Orlando’s driveway
 
 (see,
 
 183 Misc 2d 181, 182, supra; 263 AD2d 254, 255,
 
 supra).
 
 Under section 1192 (7) of the Vehicle and Traffic Law, it is arguable that the statute has no application to this case. That issue was raised but never determined by the courts below. Since we have concluded that attempted driving while intoxicated is not legally cognizable and the parties do not raise the section 1192 (7) issue before us now, no review of the reach of that section is necessary.